UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**HAROLD M. HOFFMAN, ESQ.**
240 G<small>RAND</small> A<small>VENUE</small>
E<small>NGLEWOOD</small>, NJ 07631
(201) 569-0086

**CHRONAKIS SIACHOS, LLC**
50 H<small>ARRISON</small> S<small>TREET</small> – S<small>UITE</small> 315
H<small>OBOKEN</small>, NJ 07030
(201) 792-7777
A<small>TTORNEYS FOR</small> P<small>LAINTIFF</small>

---

**RAYMOND V. CONTARINO, JR.,** and **FOXMOOR AT NEWFIELD LLC, a New Jersey Limited Liability Company**, by and through its Managing Member, Vincent C. Simonelli, individually and on behalf of those similarly situated,

            Plaintiffs,

-against-

**M.D. SASS INVESTORS SERVICES, INC., M.D. SASS TAX LIEN MANAGEMENT, L.L.C., M.D. SASS MUNICIPAL FINANCE PARTNERS-III, LLC, M.D. SASS MUNICIPAL FINANCE PARTNERS-IV, LLC, M.D. SASS MUNICIPAL FINANCE PARTNERS-V, LLC, M.D. SASS MUNICIPAL FINANCE PARTNERS-VI, LLC, U.S. BANK, N.A., ROBERT W. STEIN, CRUSADER SERVICING CORPORATION, ROYAL TAX LIEN SERVICES, LLC, ROYAL BANCSHARES OF PENNSYLVANIA, INC., CCTS, LLC, CCTS TAX LIENS I, LLC, DAVID FARBER, WILLIAM COLLINS, ROBERT ROTHMAN, and "JOHN DOES 1 – 10,"**

            Defendants.

2:12-cv-1957 (NLH) (KMW)

**AMENDED COMPLAINT**

<u>**JURY TRIAL DEMANDED**</u>

## **OVERVIEW**

By this civil action, Plaintiffs brings claims on their own behalf and on behalf of those similarly situated (the "Class"), to redress a cynical conspiracy engaged in by the Defendants above named, along with others presently unknown, to suppress and eliminate competition at publicly-held tax lien auctions conducted annually, pursuant to governing statutes of the State of New Jersey, by each municipality with the District of New Jersey.

In furtherance of the said unlawful conspiracy, which is believed to have been actively ongoing during the period 2000 – 2009, Defendants, and others, attended meetings, engaged in discussions, and entered into combinations and agreements not to compete at tax lien auctions by allocating and agreeing among themselves, and others, as to which tax liens would be bid upon by members of the conspiracy and/or refrained from being bid upon, and by submitting bids at public tax lien auctions consistent with the agreement, understanding and combination of the conspirator-defendants.

As a consequence of the foregoing, members of the conspiracy, and others, purchased tax liens at collusive, non-competitive and artificially inflated rates of interest, all to the harm of Plaintiffs and members of the class, who suffered monetary loss and, in some instances, a loss of their real property to the conspirator-defendants, through tax lien foreclosure.

The putative class comprises all residents of the State of New Jersey whose real property within the District of New Jersey was subject to a public tax lien auction during the period of the conspiracy, attended, directly and/or indirectly, by the Defendants above-named. Subject to further discovery, the putative class may be modified, enlarged and/or contracted.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1331, as it arises under laws of the United States.

2. This Court may also have subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) which provides for the original jurisdiction of the federal court in any class action in which, among other things, any member of the Class is a citizen of a state different from any defendant, and in which the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.

3. Plaintiff alleges that the claims of individual Class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, and that the total number of members of the proposed Class is greater than 100, as required by 28 U.S.C. § 1332(d)(2), (5).  Further, as set forth below, Plaintiff is a citizen of a state different from the state of citizenship of a number of the Defendants.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events, acts, transactions and omissions giving rise to the claims asserted herein occurred in this District.

**THE PARTIES**

5. At all times relevant, Plaintiff Raymond V. Contarino, Jr., was a citizen and resident of the State of New Jersey, County of Gloucester.  At all relevant times, Plaintiff Contarino held title to the property identified as 312 Franklin Avenue, Newfield, New Jersey.

6. At all times relevant, Plaintiff Foxmoor at Newfield LLC, a New Jersey Limited Liability Company ("Foxmoor"), was a limited liability company organized and existing pursuant to the laws of the State of New Jersey and headquartered in Forked River, New Jersey. At all relevant times, Vincent C. Simonelli was the sole Member of Foxmoor, as well as its Managing member. At all relevant times, Plaintiff Foxmoor held title to multiple properties located on Nottingham Lane in Newfield, New Jersey .

7. At all relevant times, Defendant M.D. Sass Investor Services, Inc., was a corporation organized and existing under the laws of the State of Delaware with a place of business in New York, New York.

8. At all relevant times, Defendant M.D. Sass Tax Lien Management, L.L.C., was a limited liability company organized and existing under the laws of the State of New York with a place of business in New York, New York.

9. At all relevant times, Defendant M.D. Sass Municipal Finance Partners-III, LLC, was a limited liability company organized and existing under the laws of the State of Delaware with a place of business in New York, New York.

10. At all relevant times, Defendant M.D. Sass Municipal Finance Partners-IV, LLC, was a limited liability company organized and existing under the laws of the State of Delaware with a place of business in New York, New York.

11. At all relevant times, Defendant M.D. Sass Municipal Finance Partners-V, LLC, was a limited liability company organized and existing under the laws of the State of Delaware with a place of business in New York, New York.

12. At all relevant times, Defendant M.D. Sass Municipal Finance Partners-VI, LLC, was a limited liability company organized and existing under the laws of the State of Delaware with a place of business in New York, New York.

13. At all relevant times, Defendant U.S. Bank, N.A., was the 5th largest commercial bank in the United States, headquartered in Cincinnati, Ohio.

14. At all relevant times, Defendant Robert W. Stein was a citizen and resident of the State of Pennsylvania.

15. At all relevant times, Defendant Crusader Servicing Corporation was a corporation organized and existing under the laws of the State of Pennsylvania that actively participated in the conspiracy alleged herein, in the State of New Jersey.

16. At all relevant times, Defendant Royal Tax Lien Services, LLC, was a limited liability company organized and existing under the laws of the State of Pennsylvania that actively participated in the conspiracy alleged herein, in the State of New Jersey.

17. At all relevant times, Defendant Royal Bancshares of Pennsylvania, Inc., was a corporation organized and existing under the laws of the State of Pennsylvania that actively participated in the conspiracy alleged herein, in the State of New Jersey.

18. At all relevant times, Defendant CCTS, LLC, was a limited liability company organized and existing under the laws of the State of New Jersey, and based in New Jersey, that actively participated in the conspiracy alleged herein, in the State of New Jersey.

19. At all relevant times, Defendant CCTS Tax Liens I, LLC, was a limited liability company organized and existing under the laws of the State of New Jersey, and based in New Jersey, that actively participated in the conspiracy alleged herein, in the State of New Jersey.

20. At all relevant times, Defendant David Farber was a citizen and resident of the State of New Jersey.

21. At all relevant times, Defendant William Collins was a citizen and resident of the State of New Jersey.

22. At all relevant times, Defendant Robert Rothman was a citizen and resident of the State of New York.

## SUBSTANTIVE ALLEGATIONS

23. A municipal lien (hereinafter "tax lien"), is a statutory restriction on real property created by statutes of the State of New Jersey.

24. When owners of real property in the State of New Jersey are delinquent in the payment of property taxes assessed on their real estate, including water and/or sewer taxes, the municipality in which the property is located, on an annual basis, auctions/sells the tax lien to members of the public in attendance at a publicly-held tax lien auction. The tax lien sold at auction customarily includes the amount of delinquent taxes, together with accrued interest and statutory costs and penalties.

25. Prior to the auction, each municipality, by statute, must give public notice of the date, time and place of the auction, together with a list of those properties which are delinquent in remitting property taxes when due.

26. The tax liens are customarily auctioned on a property-by-property basis, with bidders for the taxes liens offering bids, or refraining from doing so, on each listed property, on an individual competitive basis.

27. New Jersey has approximately 567 municipalities. Thus, each year, there are approximately 567 tax lien sales. At each tax lien auction, bidders (verbally) tender bids on the interest rate that they are prepared to accept, if successful, and that the property owner will be obliged to pay to the successful bidder, with the highest allowable bid fixed at a statutory maximum of 18 %.

28. Through a competitive bidding process, with bids beginning at 18%, the bid allocable to each property will be driven down by applicable free market forces. Based upon market forces in effect during the time frame captured by the conspiracy at bar, a free, open, honest, and competitive bidding process would result in the bid being driven down to a single digit interest rate, or even a zero per cent interest rate (successful bidders would still be entitled to collect statutory fees and penalties).

29. The successful bidder, upon remitting to the municipality the amount of delinquent taxes would then be entitled to record a tax lien on the subject property with the County Registrar, and collect from the property owner the delinquent amount auctioned by the municipality, accruing interest at the successful bid rate. Under this statutory framework,

property owners are advantaged by the honest, competitive bidding process which drives down the interest rate accruing on their tax lien to a very modest rate of interest.

30.     The governing interest rate is especially significant because it accrues to the delinquent amount purchased at auction for a two year period.  Thereafter, if not paid and redeemed by the property owner, the tax lien can be foreclosed by the successful bidder who may make application to Court for a transfer of title of the property, in fee simple, from the property owner to the successful bidder.

31.     Here, the Defendants above named, along with others presently unknown, corrupted this open, honest and competitive statutory tax lien auction process.  Indeed, they actively conspired and agreed to reap significant financial benefit, all to the detriment and harm of members of the Class, by illegally suppressing and eliminating competition at publicly-held tax lien auctions conducted annually, pursuant to governing statutes of the State of New Jersey.

32.     Upon information and belief, including guilty pleas in this Court lodged by certain of the Defendants above named to criminal Informations filed by the United States Attorney for the District of New Jersey, the Defendants above named, and others, during the period 2000-2009, attended meetings, engaged in discussions, and entered into combinations and agreements not to compete at New Jersey tax lien auctions by allocating and agreeing among themselves, and others, as to which tax liens would be bid upon by members of the conspiracy and/or refrained from being bid upon, and by submitting bids at public tax lien auctions consistent with the illegal agreement, understanding and combination of the conspirators.

33.     As a consequence of the foregoing, members of the conspiracy, Defendants above named, and others, purchased tax liens at collusive, non-competitive and artificially inflated rates

of interest, all to the harm of Plaintiffs and members of the class, who suffered monetary loss by being subjected to artificially inflated rates of interest on their tax liens, and, in some instances, a loss of their real property through tax lien foreclosure.

34. Among the tax lien sales in connection with which Defendants illegally combined, colluded, conspired and agreed to not compete, thereby deliberately and artificially elevating the interest rate bid, was the March 2007 tax lien sale held in Newfield, New Jersey.

35. At that tax lien sale, the largest lien offered for sale was on a parcel of improved real property owned by Plaintiff Contarino, located at 312 Franklin Avenue, with a tax lien of almost $6,000.

36. As a direct result of Defendants' unlawful combination, collusion, conspiracy and agreement, the tax lien allocable to Plaintiff Contarino's property at the March 2007 tax lien sale at Newfield, New Jersey, was purchased by Defendant M.D. Sass and/or its designee, at the artificially elevated, maximum bid rate of 18%.

37. In fact, as a direct result of Defendants' unlawful combination, collusion, conspiracy and agreement, all 59 tax liens auctioned at the March 2007 tax lien sale at Newfield, New Jersey, were purchased by Defendants and/or unnamed co-conspirators, at the artificially elevated, maximum bid rate of 18%.

38. At that tax lien sale, multiple liens offered for sale on multiple real properties owned by Plaintiff Foxmoor (approximately 37 separate properties) were collusively purchased, directly or indirectly, by Defendants at bar, including but not limited to the M.D. Sass defendants, Defendant U.S. Bank, N.A., Defendant Stein; Defendant Crusader, Defendant Royal

Tax Lien Services, Defendant Royal Bancshares of Pennsylvania, and Defendant CCTS Tax Liens I, LLC at the rigged, artificially elevated, maximum bid rate of 18%.

39.     As a consequence of the foregoing, Plaintiffs and members of the Class were damaged.

## CLASS ALLEGATIONS

40.     Plaintiffs bring this suit as a class action individually and in behalf of others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Subject to additional information obtained through further investigation and/or discovery, the definition of the Class may be expanded or narrowed. The proposed Class comprises all residents of the State of New Jersey whose real property within the District of New Jersey was subject to a public tax lien auction during the period of the conspiracy, attended, directly and/or indirectly, by the Defendants above-named.

41.     This action has been brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.

**Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The Class is comprised of thousands of property owners in this State.

**Commonality:** Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting only individual Class members, and include:

    a. Whether Defendants conspired unlawfully to artificially inflate interest-rate bids at New Jersey tax lien auctions; and

    b. The appropriate measure of damages sustained by the Plaintiffs and/or other members of the Class.

  **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiffs are advancing claims and legal theories typical to the Class.

  **Adequacy:** Plaintiffs' claims are made in a representative capacity on behalf of all members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

  42. Plaintiffs are similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiffs are adequate representatives of the proposed Class and will fairly and adequately protect the interests of the Class.

  43. Plaintiffs may identify and propose additional class representatives with the filing of Plaintiff's motion for class certification.

  44. This suit may be maintained as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted, and/or have refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief.

  45. **Superiority**: In addition, this suit may be maintained as a class action under Fed. R. Civ. P. 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The

injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually effectively and cost-efficiently to redress Defendants' wrongful conduct. Individual litigation would enhance delay and expense to all parties. The class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

46.     Plaintiffs repeat and incorporate the allegations in the preceding paragraphs.

47.     Defendants collusively obtained a legal interest in the tax liens they purchased, and certain interests in real property that they acquired as a result of these purchases.

48.     As individuals and entities associated in fact with respect to the collusive purchase of tax liens as set forth above, Defendants formed an enterprise within the meaning of 18 U.S.C. § 1961.

49.     All defendants participated directly or indirectly in the affairs of the enterprise.

50.     All defendants participated in the operation, supervision, and/or management of the enterprise.

51. As an identifiable group of individuals and corporate entities, the defendants collectively constitute an ascertainable structure within the meaning of 18 U.S.C. § 1961, *et seq.*, and its judicial interpretation in this District.

52. Defendants, by colluding and conspiring to purchase tax liens, and actually purchasing tax liens as set forth above, collectively, intentionally, and knowingly committed more than one act indictable under 18 U.S.C. § 1341 and/or 18 U.S.C. § 1843, in the context of numerous violations of 15 U.S.C. § 1, each constituting a racketeering activity within the meaning of 18 U.S.C. § 1961.

53. Defendants engaged in a pattern of racketeering activity by performing at least two acts of racketeering activity within the meaning of 18 U.S.C. § 1961, the last of which occurred no more than ten years after the first.

54. The predicate acts giving rise to the pattern of racketeering continued for a period from at least 1999 through 2009.

55. Defendants' pattern of racketeering activity proximately caused damage to Plaintiffs and the class by increasing their property tax liability over what it would have been but for Defendants' collusive tax lien bidding scheme.

**WHEREFORE**, Plaintiffs, on behalf of the class, demand judgment against Defendants pursuant to 18 U.S.C. § 1964 for three times the class's compensatory damages, in an amount to be proven at trial, plus an award of court costs and reasonable attorneys' fees; and granting such other and further relief as the Court deems equitable and just.

## **COUNT II**

56. Plaintiffs repeat and incorporate the allegations in the preceding paragraphs.

57. Through multiple, collusive bids and purchases of New Jersey tax liens, Defendants engaged in a pattern of related acts constituting federal crimes, occurring within ten years of each other.

58. Defendants acted with the intent to stifle competitive bidding on the subject tax liens, colluded in preparation for bidding on and purchasing the tax liens, to maximize their own pecuniary interests at the expense of the interests of Plaintiffs and the class.

59. Defendants participated in multiple acts, whether directly, indirectly, or an in advisory capacity, designed to fix the price of the subject tax liens, bid on and purchase them at a collusively and artificially favorable value, all to further their fraudulent scheme.

60. Defendants' concerted actions in collusively bidding on and purchasing the tax liens, in the manner described above, constitutes an enterprise within the meaning of N.J.S.A. 2C:41-1, *et seq.*

61. Each defendant participated in this collusive scheme with the knowledge that other defendants would commit, or had committed, at least two predicate acts of criminal activity.

62. The enterprise formed by Defendants, and the resulting collusive price-fixing and purchase of the subject tax liens, proximately caused damage to Plaintiffs and the class by increasing their property tax liability over what it would have been but for Defendants' scheme.

**WHEREFORE**, Plaintiffs, on behalf of the class, demand judgment against Defendants for three times the amount of the class's compensatory damages, in an amount to be proven at trial, plus an award of court costs and reasonable attorneys' fees; and granting such other and further relief as the Court deems equitable and just.

## **COUNT III**

63. Plaintiff repeats and incorporates the allegations in the preceding paragraphs.

64. Defendants acted in concert to commit one or more unlawful and overt acts, with respect to the bidding on and purchase of New Jersey tax liens as set forth above.

65. Defendants acted in concert to commit one or more lawful acts by unlawful and overt means, with respect to the bidding on and purchase of New Jersey tax liens as set forth above.

66. Defendants entered into an agreement to injure and/or inflict a wrong against Plaintiffs and members of the class, with respect to the bidding on and purchase of New Jersey tax liens as set forth above.

67. Defendants' overt acts and agreement proximately caused damage to Plaintiffs and the class in terms of what their property tax liability would have been, but for Defendants' concerted wrongdoing.

68. Defendants are equally and vicariously liable to Plaintiffs and the class for the damages that all or either of them caused.

**WHEREFORE**, Plaintiffs, on behalf of the class, demand judgment against Defendants,

for compensatory damages in an amount to be proven at trial; and such other and further relief as the Court deems equitable and just.

## **COUNT IV**

58. Plaintiffs repeats and incorporate the allegations in the preceding paragraphs.

59. As a result of Defendants' unlawful conspiracy to artificially inflate the bid interest percentage-rate at New Jersey tax lien auctions, the Plaintiffs and class members paid money to and conferred a benefit upon Defendants in connection with their tax liens which benefit was received and continues to be retained by Defendant.

60. Retention of that benefit without reimbursement by Defendants to all class members would be unjust and inequitable.

61. Retention of that benefit by Defendants at the expense of all class members would be unjust and inequitable.

62. Defendants, as a result of its unlawful conspiracy as aforesaid, became indebted to class members for the sums paid by class members to Defendants representing inflated interest on their tax liens. Retention of said sums, without reimbursement, would result in the unlawful, unjust and inequitable enrichment of Defendants beyond their lawful rights.

63. All monies paid by class members to Defendants representing inflated interest rates on auctioned tax liens, including all interest earned by Defendant on such monies while in wrongful possession thereof, should be disgorged by Defendants and reimbursed to class members under principles of unjust enrichment.

64. As a proximate result of Defendant's conduct, members of the class were damaged.

**WHEREFORE**, plaintiffs, in behalf of the class, demand judgment against the Defendants for reimbursement of sums paid by class members to Defendants representing collusive, artificially elevated interest on tax lien auction sales, together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, and any other and further relief as the Court deems just and proper.

## COUNT V

65. Plaintiffs repeat and incorporate the allegations in the preceding paragraphs.

66. At all relevant times, funds from outside the State of New Jersey, including but not limited to funds originating from New York and/or Pennsylvania, were used by one or more of the conspirator-defendants to purchase tax liens at auctions subject to the conspiracy.

67. Indeed, out of state bidders participated at multiple New Jersey tax lien auctions during the period of the conspiracy, who paid for tax liens unlawfully purchased through combination and conspiracy to artificially and collusively elevate bid prices, with out of state funds.

68. The activities of the conspirator-defendants named in this civil action, along with others as yet unnamed, with respect to the purchase of municipal tax liens, were within the flow of, and substantially effected, interstate trade and commerce.

69. Section 1 of the Sherman Act (15 U.S.C. § 1) provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

70. The defendant-conspirators named herein, along with others as yet unnamed, were parties to a contract, combination and conspiracy which imposed an unreasonable restraint on trade. Indeed, in pleas filed by certain of the defendant-conspirators at bar to criminal Informations filed in this District by the United States Attorney's Office charging criminal violations of 15 U.S.C. § 1, written admissions have been made by such conspirator-defendants to participation in a contract, combination and/or conspiracy that imposed an unreasonable restraint on trade by eliminating competition in the auction bidding process on the sale of municipal tax liens.

71. Defendants at bar undertook and engaged in – and have admitted same – concerted action, as well unity and commonality of committed purpose, design and understanding in order consciously to carry out their planned and agreed common scheme to rig the bidding process for municipal tax liens thereby eliminating competition in such bidding process.

72. Defendants' scheme, on its face, had no purpose except to stifle competition in the bidding process for the purchase of municipal tax liens.

73. Defendants, purportedly competitors in the auction bid process for the purchase of municipal tax liens, agreed in advance, and have admitted in writing that they agreed in advance, to fix prices and divide the available market of municipal tax liens.

74. Defendants conduct is *per se* illegal under Section 1 of the Sherman Act (15 U.S.C. § 1).

75. The injury suffered by Plaintiffs and members of the Class, in the form of artificially elevated rates of interest on the tax liens sold on their properties, is directly attributable to the competition- reducing aspect and effect of the defendant's behavior.

**WHEREFORE**, Plaintiffs, on behalf of the class, demand judgment against Defendants for three times the class's compensatory damages, in an amount to be proven at trial, plus an award of court costs and reasonable attorneys' fees; and granting such other and further relief as the Court deems equitable and just.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: **April 9, 2012**

                                                                _____s/HMH_____
                                                          **HAROLD M. HOFFMAN, ESQ.**
                                                          *Counsel for Plaintiff and the Putative Class*
                                                          240 Grand Avenue
                                                          Englewood, NJ 07631
                                                          *hoffman.esq@verizon.net*